UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DOMINIQUE FLICHER,** | * | **CIVIL ACTION** |
| **CHARLES ALBERT MENDY, and** | * | |
| **CHERYL ANN GERARD MENDY** | * | |
| | * | **NO:  10-cv-1902** |
| **Plaintiffs** | * | |
| versus | * | |
| | * | **JUDGE:  "MAVL"** |
| **BAC HOME LOAN SERVING, LP** | * | |
| **JACKSON & McPHERSON, PLC** | * | |
| **RADER JACKSON** | * | **MAGISTRATE:  "ALC"** |
| **DOES 1 THROUGH 10** | * | |
| **ABC INSURANCE COMPANY** | * | |
| **XYZ INSURANCE COMPANY** | * | |
| | * | |
| **Defendants** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

NOW INTO COURT, through the undersigned counsel, comes Plaintiffs, Dominique Flicher, Charles Albert Mendy and Cheryl Ann Mendy, and in opposition to the Motion to Dismiss filed by Defendants Rader Jackson and Jackson & McPherson, LLC (Docket No. 9), respectfully offer this Memorandum In Opposition to Motion to Dismiss.

PROCEDURAL HISTORY

The instant matter was filed on or about July 6, 2010, immediately upon notice of the denial of supervisory writ filed by Plaintiffs and state court defendants, Dominique Flicher Mendy and Charles Albert Mendy.

Plaintiff BAC Home Loan Servicing, L.P. ("BHLS") brought a Petition for Executory Process seeking to foreclose on the property located at 4141 Vendome Place, New Orleans, LA 70125 and owned by applicants. (Record No. 9-1, Petition for Executory Process).

1

In conjunction with its petition for Executory Process, BHLS obtained a writ of Seizure. A sale was initially set but was postponed by agreement after Executory Process Defendants filed an Application for Preliminary Injunction (Record No. 9-5, Request for Preliminary Injunction to Arrest Executory Proceedings, Rule to Show Cause, and Affirmative Defenses) to allow BHLS to process a short sale agreement between the parties.  Despite Executory Process Defendants providing BHLS with all documents requested and BHLS incessantly affirming its agreement and intention to do the short sale, BHLS proceeded to schedule a sale of the Executory Process Defendants' Property.  The sale was set for and eventually took place on July 1, 2010.

To prepare them for a preliminary injunction hearing, Executory Process Defendants subpoenaed document they considered pertinent to their defense. Further, Executory Process Defendants sought to depose BHLS. Both the Subpoena for the production of documents and Notice of Deposition were served on BHLS with sufficient notice. However, BHLS, however failed to appear at the scheduled deposition.

While pretending to have an approved short sale for Executory Process Defendants and awaiting "final approval" on the short sale, BHLS continued with foreclosure of the property.

Out of an abundance of caution, Plaintiff filed a Motion to Compel discovery (the party deposition of Plaintiff under La.C.C.P Article 1442 and the production of documents). Further, Plaintiffs filed a Motion to reset the hearing on their Application for Preliminary Injunction. Both matters were set for hearing on June 29, 2010 in the Civil District Court for the Parish of Orleans.

The Court denied the *ex parte* effort of plaintiffs on the Motion to compel, and set it for hearing on the same date as the hearing on the Preliminary Injunction. Despite the fact that

BHLS offered no opposition, the court not only denied Executory Process Defendants' Motion to Compel discovery but also, without allowing BHLS to proceed *in ordinaria*, the court summarily denied the Plaintiffs' and Executory Process Defendants' request for preliminary injunction.

The Honorable Michael Bagneris, at a hearing held on June 29, 2010, heard a hearing on Plaintiffs' Motion to Compel and Application for Preliminary Injunction.  Judge Michael Bagneris denied both the Motion to Compel as well as the Application for Preliminary Injunction, but did so with a caveat:  BHLS was to proceed with the sale of the Property at its own peril as Executory Process Defendants would be free to pursue BHLS for any damages caused by a foreclosure sale in the event it proceeded with the sale and the irregularities raised by Plaintiffs in their attempt to stop the sale (and herein) were to be founded. (Exhibit 1, A facsimile of the transcript of the June 29, 2010 proceeding attached in its entirety).

Desiring to save their property, rather that have it sold and then pursue monetary damages, the Executory Process Defendants sought to enjoin the sale of their Property, on June 29, 2010, the same date as the entry of the Order denying their Motion to Compel as well as their Application for a Preliminary Injunction, by filing a Notice of Intent to File for Supervisory Writ.  Without addressing the substantive issues raised, the Fourth Circuit denied the Executory Process Defendants' application for an order stopping the sale.  (Record No. 9-9).  The deciding factor appears to Plaintiffs to be the failure of Executory Process Defendants to have their application for a preliminary injunction verified [no independent reasoned opinion accompanied the order].  *Id.*

Plaintiffs then file the instant matter, <u>Mendy v. BAC Home Loan Serving, LLP</u>, Eastern District Of Louisiana, No. 10-cv-1092.  However, the case was transferred to the jurisdiction of the Joint Panel on Multidistrict Litigation (JPML) on or about August 3, 2010 along with several

other related matters as fully outlined in the Status Report filed by Plaintiffs (Docket No. 11). The proceedings in the JPML was assigned case number MDL No. 2193 and is entitled In Re: Bank of America HAMP Contract Litigation. The JPML subsequently ruled on the Motion to Transfer and Consolidate, and decided not to consolidate or transfer the instant matter to the District of Massachusetts (Docket No. 12).

### ARGUMENT

Plaintiffs suggest to this court that the Motion to Dismiss filed by Defendants Rader Jackson and Jackson & McPherson, PLC should be dismissed.

**Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings after the pleadings have closed, but not within such time as to delay trial. In order to prevail on such a motion, the movant must show "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004). In considering a motion for judgment on the pleadings, this Court views the facts alleged in the pleadings as true and any inferences to be drawn therefrom in the light most favorable to the non-movant. Id.

**Improper Collateral Attacks**

Defendants' primary argument is that Plaintiffs are seeking improper collateral attacks on a state court decision in contravention of law. Nothing could be further from the truth. Rather than seek a collateral attack of a state court decision, Plaintiffs suggest that they are suing Defendants independent of the issues reviewed by pertinent state court (the Civil District Court for the Parish of Orleans) or the Louisiana Fourth Circuit Court.

While the Plaintiffs' causes of action in the instant arise of the same facts as the state

4

court action—namely mortgage and subsequent foreclosure of the Plaintiff's home, the issues raised in the two actions are different, even if related.

The state court action strictly was a summary proceeding, a foreclosure by executory process and a related attempt to stop the said foreclosure via a summary proceeding, namely a preliminary injunction application.

Such a foreclosure by executory process could only be averted by payment of the mount claimed or by an arrest of the sale through the issuance of a preliminary injunction (other than by payment of the debt claimed). The state court defendants did not have the fund necessary to arrest the sale by payment. That left them two options—arrest of the sale by reinstatement of the loan or arrest of the sale by Preliminary Injunction. Defendants rebuffed all efforts by Plaintiffs to reinstate or modify their loan, in contravention of Federal law. Further, the Plaintiffs' efforts to arrest the sale via a Preliminary Injunction were defeated.

The trial court, while recognizing that the state court defendants raised issues that had merits, felt that its hands were tied as it was presented with documents it believed satisfied executory process on their face and state court defendants did not dispute that a debt was owed. The only thing Judge Bagneris felt he could do under the circumstances was reserve for Executory Process Defendants the right to sue BHLS as the saw fit if BHLS went forward with the foreclosure sale of the Property. *See* Exhibit 1, pp.1-5. In the court's words, ". . . if Mr. Mendy is correct on this point, that it's not an exercise of good faith [the executory process], then his remedy is to proceed accordingly against the bank for failure to do so and we have already stated what the damages may be." Exhibit 1, pp.5-6. Despite the court's express caution and its not very subtle attempts to cajole Defendants into delaying the sale, defendants went ahead with the foreclosure sale of the Property knowing fully well that the issues raised by the

5

state court defendants, and issues which the state court did not have time to review, were meritorious.

More significantly, the state court advised Defendants that it was reserving the State Court Defendants the right to seek monetary damages in the event Defendants improperly foreclosed upon their property. To quote the state court, "It sounds like you have dynamite case against the bank when you file against them for their failure to exercise good faith effort and failure to demonstrate all of the matters that you just articulated." Exhibit 1, p.8.

Essentially, the state court recognized the bifurcate nature of the matters before it—BHLS's right to proceed by executory process on a procedural basis (whether or not they were substantively entitled to it) and the plaintiffs right to sue Defendants for proceeding with the foreclosure, in the event that the defendants substantively improperly proceeded with executory process.

The Louisiana Fourth Circuit was asked to intervene to force the court to look at the merits of the state court Defendants' objections and to stop executory process. The Fourth Circuit demurred, stating that its review of the documents filed in support of the executory process caused it to hold that it found no issues with the documents filed by Defendants in the state court claim and BHLS's ability to proceed with the sale. More importantly, Plaintiffs' attempt to stop the sale was defective as their application for preliminary injunction was not verified. Record No. 9-9.

Even if the state court did not specifically reserve for Plaintiffs herein the right to sue Defendants for damages to the extent that the foreclosure was improper and caused defendants damage, Louisiana would have as damages is the remedy.

Plaintiffs herein simply are exercising the option to pursue damage in *ordinaria* provided

them by the very state court that allowed foreclosure which is the cause of this litigation, an option they are entitled to under Louisiana law, even if the right to sue was not made a condition of the granting of the green light to Defendants to sell the property in a public sale. *Berger V. First Federal Savings And Loan Association Of Warner Robins, Georgia, Et Al.*, 824 F.2d 400 (5th Circuit 1987). In the words of the court:

> We begin our analysis with the jurisprudence recognizing an action for the wrongful seizure of property, either under executory process or by a writ of fiera facias under ordinary process. General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980); Escat v. National Bank of Commerce in New Orleans, 284 So.2d 832 (La.App.1973) (overruled in part on other grounds in Meyers ). The action has been allowed for failure to comply with procedural formalities, including the omission of required authentic evidence in obtaining executory process, even though the seizing party demonstrated neither bad faith nor malice. Escat; Moses v. American Security Bank of Ville Platte, 222 So.2d 899 (La.App.1969). The courts have imposed liability with a minimal showing of fault; indeed, it is not clear whether any proof is required beyond the fact that property was improperly seized.

The only reason, Plaintiffs chose to sue Defendants in federal court and not state court is because of the federal cause of actions also pleaded by Plaintiffs against Defendants.

None of the causes of action in this matter were before either the state court or the Louisiana Fourth Circuit Court of appeal. Neither could they have been, by right.

Executory process is a summary proceeding. The instant matter is an ordinary proceeding. Louisiana law does not allow an accumulation of a summary proceeding (application for a preliminary injunction before Judge Bagneris) with an ordinary one (Petition for Damages and Petition for Permanent Injunction as in the instant). La. C.C.P. Art. 464. La. C.C.P. Art. 464, addresses the effect of improper cumulation, which states:

> When the court lacks jurisdiction of, or when the venue is improper as to, one of the actions cumulated, that action shall be dismissed. When the cumulation is improper for any other reason, the court may: (1) order separate trials of the actions; or (2) order the plaintiff to elect which actions be shall proceed with, and to amend his petition so as to delete therefrom all allegations relating to the action which he elects to discontinue. The penalty for noncompliance with an order to amend  is a dismissal of plaintiff's suit."

La. C.C.P. Art. 464. *See also Abadie v. Cassidy*, 581 So. 2d 657 (La. 1991). In that case plaintiff sued the owner of an adjoining lot. Each lot was burdened with a drainage servitude. Plaintiffs filed suit alleging defendants were obstructing the servitude and causing damage to plaintiffs' property. Plaintiffs sought damages and injunctive relief. The trial court sustained defendants' dilatory exception of improper cumulation of actions and dismissed plaintiffs' suit after determining any defects in the pleadings could not be removed by amendment. The court of appeal, in an unpublished opinion, affirmed the portion of the trial court judgment maintaining the dilatory exception of improper cumulation. The court of appeal relied upon *People of the Living God v. Chantilly Corp.*, 211 So. 2d 445 (La. App. 4 Cir. 1968), and held that cumulation was improper because the action for damages and the action for injunctive relief employ different forms of procedure. The Supreme Court of Louisiana reversed both lower courts stating:  "The requirement that all of the actions employ the same form of procedure refers  merely to whether each of the cumulative actions employ either ordinary, executory or summary procedure. See La.Code Civ.P. art. 463, comment (a); *Johnson v. Marvin Cutrer Contractor, Inc.*, 348 So. 2d 1256 (La.App. 2nd Cir.1977); Tate, Work of the Appellate Courts-1968-1969, 30 La.L.Rev. 286, 287 (1969).

In the present case, if Defendants' suggestion were to be accepted as true (that this is an improper collateral attack) the plaintiffs would have improperly cumulated two actions that could not be cumulated.  The two improperly cumulated actions would have been the claim for

8

damages in this matter and summary foreclosure action and defensive action against same the application for injunctive relief (preliminary injunction to arrest the foreclosure) in the state court action.

Even though there is an injunctive component in the instant matter, same has no effect. The principal demand for a permanent injunction is determined on its merits only after a full trial under ordinary process. See *Smith v. West Virginia Oil & Gas Co.*, 373 So. 2d 488 (La.1979); Haughton Elevator Division v. State, 367 So. 2d 1161 (La.1979); *Equitable Petroleum v. Central Transmission, Inc.*, 431 So. 2d 1084 (La.App. 2nd Cir.1983).  As only the claims for damages (and possible permanent injunction) in the present case are triable by ordinary process, plaintiffs never had same before judge Bagneris.  The matters do not employ the same "form" of procedure.  The state court foreclosure action was a summary proceeding while the instant, and each of its component parts, is an ordinary proceeding.

### The FDCPA

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Consumers who have been subjected to abusive, deceptive and unfair debt collection practices are entitled to recover damages and attorney's fees and costs. 15 U.S.C. § 1692k(a). However, in order for the FDCPA to apply, the prohibited practices must occur in an attempt to collect a "debt" as defined by the statute:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

9

Collection of commercial debt "is beyond [the Act's] coverage." <u>Staub v. Harris</u>, 626 F.2d 275, 278 (3d Cir. 1980) (citing S. Rep. No. 382, 95th Cong. 1st Sess. at 3 (1977), reprinted at 1977 U.S.C.C.A.N. 1695, 1697); *see also* <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163, 1168-69 (3d Cir. 1987); <u>Sheehan v. Mellon Bank</u>, No. 95-2969, 1995 U.S. Dist. LEXIS 13457, at *4 (E.D. Pa. Sept. 7, 1995) (stating that "the FDCPA is inapplicable to the collection of commercial debt"). In <u>Lyon Financial Services v. Woodlake Imaging, LLC</u>, the court found that where the counterclaimant identified itself as a "business enterprise," indicated that the debt at issue originated in "a dialogue . . . concerning means by which it could grow its operations," leased equipment to develop its business and negotiated with its "commercial landlord" to expand its space, the counterclaimant's obligation was "certainly commercial debt." No. 04-3334, 2005 U.S. Dist. LEXIS 2011, at *17 (E.D. Pa. Feb. 9, 2005).

Thus, because the debt in Lyon was not incurred "primarily for personal, family or household purposes," the court dismissed the FDCPA claim. Id. (citing 15 U.S.C. § 1692a(5)).

Unlike the Lyons case, however, the Plaintiffs herein do not have commercial debts. Plaintiffs maintained that they only consumer debts with the Defendant BAC and that the attorney Defendants were engaged in the collection of their consumer, not business, debt. Accepted as true, the Plaintiffs' allegations and consideration of the record before the Court, one cannot help but find that the alleged obligation at issue is consumer, debt within the coverage of the FDCPA.  Only commercial debts are beyond the coverage of the FDCPA.

<u>Jackson and Jackson & McPherson are Debt Collectors.</u>

The FDCPA's provisions generally apply only to "debt collectors." <u>*FTC v. Check*</u>

10

*Investors, Inc.*, No. 03-2115, 2003 U.S. Dist. LEXIS 26940, at *25 (D.N.J. July 29, 2003). The FDCPA defines a debt collector, in part, as: "Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also* Check Investors, 2003 U.S. Dist. LEXIS 26940, at p.30 (*citing* Staub, 626 F.2d at 277) ("The Third Circuit[]. . . made clear that the FDCPA is directed at those persons who engage in business for the principal purpose of collecting debts.") "The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf." *Staub*, 626 F.2d at 277.

In petition for damages, Plaintiffs alleged that Defendant Jackson & McPherson and its employees and/or agents (including Jackson) engaged in debt collection activities on behalf of BAC and took actions against Plaintiffs in furtherance of such engagement. As Jackson & McPherson engaged in debt collection activities against plaintiffs, and presumably others, Jackson & McPherson is a "debtor collector" on behalf of a third party as contemplated by the FDCPA. Similarly, as Jackson engaged in debt collection activities against plaintiffs, and presumably others, Jackson is a "debtor collector" on behalf of a third party as contemplated by the FDCPA.

Jackson & McPherson is a 'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)" (Pl.'s Compl. ¶ 155) and that Jackson & McPherson employees and agents, including Jackson, are natural persons employed by Defendant BHLS and Jackson & McPherson. As a result, the said employees and agents, and each of them, including Jackson, may be a collection

11

agent and a 'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)" (id. ¶ 156).

Jackson & McPherson engages in, and has engaged in, debt collection activities on behalf of BAC and other third parties.   At least if the allegations of Plaintiffs are accepted as true.

Under the standard of review for consideration of a motion for summary judgment, Plaintiffs are required to go beyond the pleadings and present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Under the standard of review for consideration of a motion for judgment on the pleadings, however, Plaintiffs need not go beyond the pleadings because the Court views the facts alleged in the pleadings as true and any inferences to be drawn therefrom in the light most favorable to the non-movant. *Mele*, 359 F.3d at 253.

Consequently, Defendant Jackson & McPherson's and Jackson's Motion to Dismiss on the FDCPA should be dismissed on the merits insofar as it is a motion for judgment on the pleadings.

Plaintiffs owed a "debt" as defined by 15 U.S.C. § 1692a(5) and both Jackson & McPherson and its employees and agents were "debt collectors" under 15 U.S.C. § 1692a(6). Thus, Jackson is a "debt Collector" by extension and by his actions.

Further, unlike the Plaintiffs who failed to plead the actions of the defendants with specificity, the Plaintiffs herein outlined with great detail, how the debtor collectors mispresented facts and proceeded with foreclosure of a property they knew they had no basis for foreclosing on in light of the objections, particularly, the HAMP issues raised by state court defendants.

Jackson & McPherson and Jackson, did the following specific acts:

File the foreclosure proceedings;

Write misleading letters;

Mispresent BHLS's position;

Lull the state court defendants into a false sense of security;

Pretended to give BHLS advise without disclosing all the fact the BHLS;

Sell a property they had no right to sell;

Sell the property without any regard to Cheryl Ann Mendy's right in same.

Fail to give a Mennonite Notice to Cheryl Ann Mendy

Consequently, Plaintiffs are entitled to proceed under the FDCPA.

**Federal Unfair Trade Practices.**

Contrary to Defendants' contention, there is a personal right to sue under the FTC act. For example, a private right of action, created by Sections 616 and 617 of the FCRA, 15 U.S.C. §§ 1681n, 1681o, may be based on a violation of the requirements of Section 623(b) of the Act, 15 U.S.C. § 1681s-2(b).

It is Congress, not the courts, that "confers" a federal statutory cause of action. As in any matter of statutory interpretation, the inquiry begins (and often ends) "with the plain meaning of the statute's language." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 356 (1994)).  Here, Congress has clearly and expressly provided for a private right of action.  The language creating the private cause of action could hardly be clearer. Sections 616 and 617 of the Act, 15 U.S.C. §§ 1681n, 1681o, expressly create private damage actions for, respectively, willful and negligent violations of the FCRA. In the parallel language of those sections,

"*[a]ny person*" who fails "to comply with *any requirement* imposed under [the FCRA]

*with respect to any consumer* is liable *to that consumer * * * .*" (Emphasis added.) Section 623 of the Act, 15 U.S.C. § 1681s-2, imposes two distinct sets of obligations on persons who (like Chase) furnish information to CRAs. Section 623(a) imposes broad duties on such furnishers to refrain from knowingly reporting erroneous information, to correct and update furnished information, and to provide various types of notice. Section 623(b) imposes further obligations, which are triggered only upon a dispute regarding the completeness or accuracy of particular information that a person has furnished to a CRA. In such instances, the furnisher is required to conduct an investigation, review all relevant information, and report the results of the investigation to CRAs. In the present case, plaintiffs have alleged that BHLS have failed to fulfill its obligations under the FTCA, including Section 623(b). *See* Compl., ¶ 165-171.

Section 623 does not itself contain language creating private remedies, but recognizes the facial applicability of Sections 616 and 617 by *selectively limiting* their effect. Specifically, Section 623(c), 15 U.S.C. § 1681s-2(c), provides that Sections 616 and 617 "do not apply to any failure to comply *with subsection (a)*," apart from certain state enforcement proceedings not pertinent here. (Emphasis added.) Section 623(d), 15 U.S.C. § 1681s-2(d), further confirms the limitation on enforcement of the provisions of subsection (a), by stating that it "shall be enforced exclusively under [15 U.S.C. § 1681s] by the Federal agencies and officials and the State officials identified in that section." Neither Section 623(c) nor Section 623(d) contains any words that limit the availability of Section 616 and 617 private remedies with respect to violations of *subsection (b)* of Section 623.

Application of these provisions clearly shows that there is a private right of action in the

14

instant matter, the availability of a private right of action is based on violations of Section 623(b) and other provisions.

### Gramm Leach Bliley Act.

Plaintiffs cede this issue to Defendants. On further research, Plaintiffs believe that it is questionable whether there is a personal right to sue under the said act even though an argument can be made for same.

### Abuse of Executory Process

As argued above, the district court never ruled on the merits of whether Defendants abused the executory process. The state court distinctly recognized that there was the possibility of abuse and reserved plaintiffs the right to raise those issues in an ordinary proceeding before the civil district court or other court of proper venue such as the instant. The court stated that any such attacks would have to be in a new suit: "Well, I believe it's going to be a new suit. I believe your effort against the bank [and other defendants] will require your filing a petition against the bank articulating these matters. . ." Exhibit 1, p.8-9.

### Bad Faith

For the reasons articulated above, particularly in the Collateral Attack and Abuse of Executory Process Sections, the Plaintiffs are entitled to pursue an action for bad faith.

Defendants' action is not the enforcement of security interest as outlined above.

### Violation of Article 843

For the reasons articulated above, particularly in the Collateral Attack and Abuse of Executory Process Sections, the Plaintiffs are entitled to pursue an action for Defendants'

violation of Article 843.

### Failure to Give Mennonite Notice

For the reasons articulated above, particularly in the Collateral Attack and Abuse of Executory Process Sections, the Plaintiffs are entitled to pursue an action for Defendants failure to give a Mennonite Notice.

### Counts XIV, XV, XVI and XVII

For the reasons articulated above, particularly in the Collateral Attack and Abuse of Executory Process Sections, the Plaintiffs are entitled to pursue the said causes of action. Accepted as true, Plaintiffs' allegations are that the attorney defendants went beyond the expected diligent representation of their clients. Instead, they knowingly and intentionally harmed plaintiffs by conspiring with BHLS and specifically making misrepresentation to both the court and Plaintiffs in furtherance of their bad faith and intentional acts. *See* Record No. 9 *in toto* and Exhibit 1. If the allegations made in ¶320-328 (as well as the rest of the complaint) do not amount to actions that warrant action against a lawyer, nothing else will.

### Counts XVIII, XX and XXI

Plaintiffs suggest that the actions of movers were pleaded with particularity. Parties, ¶1-2. Jurisdiction and Venue, ¶3-11. Introduction, ¶12-34. Factual Background, ¶35-101. Preceding Counts, ¶102-335. Counts in question. ¶336-340. The attorney Defendants not only filed the executory process action, Jackson even attested to the veracity of the allegations in same by an affidavit required of the bank and caused the writ of seizure to be issued by his representations. ¶96-99. Further, the attorney defendants engaged not only in collections actions

in violation of the FDCPA (¶153-164) but also so knowing fully well that they had not been truthful to the court or the plaintiffs herein. Finally, the attorney defendants acted in concert with BHLS and its associates (including the unidentified defendants) in its conspiracy to routine deprive Plaintiffs of their rights. The attorney defendants routinely committed these intentional, corrupt and improper acts. ¶321.

Consequently, for these reasons and he reasons articulated hereinabove, particularly in the Collateral Attack and Abuse of Executory Process Sections, the Plaintiffs are entitled to pursue the said.

**Opportunity to Amend**

Plaintiffs respectfully ask for an opportunity to amend in the event that the courts find that their claims against the attorney defendants was not pleaded with the particularity required by Rule 9.

## CONCLUSION

For all of the foregoing reasons, the Motion to Dismiss filed by Defendants Rader Jackson and Jackson & McPherson, LLC should be denied.

Respectfully Submitted

MENDY & BEEKMAN, PLLC

/s/ Edward B. Mendy

_____
EDWARD B. MENDY, LA Bar No.: 22117
One Liberty Center, Suite 3600
Philadelphia, PA 19103
267-675-7100 * 215-701-9547 (f)
ebmendy@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOMINIQUE FLICHER,**<br>**CHARLES ALBERT MENDY, and**<br>**CHERYL ANN GERARD MENDY** | * LAED NO: 10-cv-1902<br>*<br>*<br>* |
| **Plaintiffs** | * |
| versus | *<br>* |
| **BAC HOME LOAN SERVING, LP**<br>**JACKSON & McPHERSON, PLC**<br>**RADER JACKSON**<br>**DOES 1 THROUGH 10**<br>**ABC INSURANCE COMPANY**<br>**XYZ INSURANCE COMPANY** | *<br>*<br>*<br>*<br>*<br>*<br>* |
| **Defendants** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November, 2010, I caused to be sent via email and mailed a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS,** via the court's electronic notice system, electronic mail and/or first class U.S. mail, postage prepaid, to all counsel of record.

/s/ Edward Mendy

_____
EDWARD B. MENDY